**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **COREY DESHAUN BELL,** | § | |
| **Plaintiff,** | § | |
| **v.** | § | **Civil Action No. 3:22-CV-01190-G-BH** |
| | § | |
| **KILOLO KIJAKAZI,** | § | |
| **ACTING COMMISSIONER OF SOCIAL** | § | |
| **SECURITY ADMINISTRATION,** | § | |
| **Defendant.** | § | **Referred to U.S. Magistrate Judge**[1] |

### FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Based on the relevant filings, evidence, and applicable law, the final decision of the Commissioner of Social Security (Commissioner) denying the plaintiff's claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act (the Act) should be **AFFIRMED**.

## I.    BACKGROUND

Corey Deshaun Bell (Plaintiff) filed his application for DIB on June 5, 2020, alleging disability beginning January 1, 2020. (doc. 13-1 at 184.)[2] His claim was denied initially on August 3, 2020, and upon reconsideration on November 4, 2020. (*Id.* at 77-84, 86-97.) After requesting a hearing before an Administrative Law Judge (ALJ), he appeared and testified at a telephonic hearing on April 6, 2021, during which the ALJ granted his motion to amend his alleged onset date to March 4, 2020. (*Id.* at 55-76, 118.) On May 12, 2021, the ALJ found that Plaintiff had not been disabled since March 4, 2020, the date of his amended alleged onset date. (*Id.* at 41-50.)

---

[1] By *Special Order 3-251*, this social security appeal was automatically referred for proposed findings of fact and recommendation for disposition.

[2] Citations to the record refer to the CM /ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

1

Plaintiff timely appealed the ALJ's decision to the Appeals Council, which denied his request for review on February 3, 2022, making the ALJ's decision the final decision of the Commissioner. (*Id.* at 9-13.) He timely appealed the Commissioner's decision under 42 U.S.C. § 405(g). (*See* doc. 1.)

## A.  Age, Education, and Work Experience

Plaintiff was born on January 8, 1974; he was 46 years old on his amended alleged onset date. (doc. 13-1 at 62-64, 184.) He had at least a high school education and past relevant work as a tractor trailer truck driver. (*Id.* at 216, 225.)

## B.  Medical Evidence

In early 2020, Plaintiff was treated for low back pain due to post-laminectomy syndrome by Brian Wiley, M.D. (Pain Doctor). (*Id.* at 611-28.) In January 2020, Plaintiff complained of aching, constant, dull, shooting, and stabbing lower back pain at 8/10; it worsened when he stood, sat, exercised, bended, stretched, or twisted, but lying down and medication relieved it. (*Id.* at 623-28.) He had last taken his pain medication three days earlier due to restrictions on use of narcotics while driving. (*Id.* at 623.) He had limited and painful range of motion in the lumbar spine, positive bilateral straight-leg raise test, positive bilateral femoral nerve traction test, positive bilateral Patrick-Fabere test, and abnormal gait and stance, but no paraspinal muscle[3] atrophy, weakness, or spasms. (*Id.* at 625.) He reported a history of 80 to 90 percent improvement with physical therapy and aquatic exercises. (*Id.* at 624.) His prescribed caudal epidural steroid injection (ESI) had been denied, but his requested physical therapy was ordered. (*Id.* at 628.)[4] In February 2020,

---

[3] "The muscles surrounding and attaching to the spine ([i.e.], paraspinal muscles) are responsible for both moving and stabilizing the spine and are the source of the majority of the loads that spine tissues experience; thus, they play an extremely crucial role in the proper functioning of the spine and whole body." Alex M. Noonan & Stephen H. M. Brown, *Paraspinal muscle pathophysiology associated with low back pain and spine degenerative disorders*, JOR Spine 1 (2021), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC8479522/pdf/JSP2-4-e1171.pdf.

[4] In January 2020, Pain Doctor did not examine Plaintiff, but he did "electronically approve" the treatment

Plaintiff's complaints remained the same, but he had 5/5 strength in the bilateral upper and lower extremities. (*Id.* at 617-22.) In March 2020, he reported the same symptoms as well as numbness and a left-sided decrease in his ability to function, range of motion, and mobility since a prior surgery. (*Id.* at 611-16.)  At each visit, his pain medication was refilled. (*Id.* at 611-28.)

Between April 2020 and August 2020, Plaintiff visited Pain Doctor for lower back pain. (*Id.* at 593-98, 600-10, 709-14.) At each visit, his pain medication was refilled. (*Id.*) In April 2020, his condition remained the same, except he had decreased sensation and pain along the L5-S1 nerve distribution, increasing numbness/tingling in his left leg with standing, and decreased strength in his left leg. (*Id.* at 605-10.) His caudal ESI was again reordered. (*Id.* at 608.) During a May 2020 telemedicine visit, Plaintiff again reported the same symptoms and limitations, except his pain had decreased to 6/10. (*Id.* at 600-04.) His condition remained the same in July 2020, except his pain had increased to 8/10 because he had skipped doses in order to drive. (*Id.* at 593-98.) Plaintiff stated that because his caudal ESI had been denied by worker's compensation due to an administrative error, he would try to cover it with private insurance. (*Id.*) In August 2020, Plaintiff's condition remained the same, except his pain had increased to 10/10, his left lower extremity had weakness, and he was limited to part-time work because he could drive 2 days in a row before he needed to rest for 3 days. (*Id.* at 709-14.)[5]

On August 3, 2020, state agency medical consultant (SAMC) Cynthia Linardos, M.D., completed a physical residual functional capacity (RFC) assessment based on Plaintiff's medical record. (*Id.* at 77-84.) She opined that he was capable of light work, except he could occasionally

---

note. (doc. 13-1 at 628.)

[5] Pain Doctor did not examine Plaintiff in August 2020, but he did "electronically approve" the treatment note for that visit. (doc. 13-1 at 714.)

balance, stoop, kneel, crouch, crawl, and climb ramps/stairs but never climb ladders, ropes, or scaffolds. (*Id.* at 81-82.)

On August 5, 2020, Pain Doctor first administered a caudal ESI due to post-laminectomy syndrome. (*Id.* at 715-17.) At admission, Plaintiff had "[n]o limitations" with range of motion/sensation, and his pain was 1/10 throughout the procedure. (*Id.* at 804.) He tolerated the procedure "well" and was discharged to the recovery room; he was able to move his lower extremities and his pain improved. (*Id.* at 764.)

On November 4, 2020, SAMC Nancy Armstrong, M.D., also completed a physical RFC assessment based on the medical evidence of record. (*Id.* at 86-100.) She concurred with SAMC Linardos's findings, except she limited Plaintiff to standing and/or walking 3 hours in an 8-hour workday, and she reduced his exertional ability from light to sedentary work. (*Id.* at 95-96.)

On December 19, 2020, Pain Doctor completed a one-page checkbox and fill-in-the-blank physical medical source statement reflecting his diagnosis of post-laminectomy syndrome and spinal stenosis. (*Id.* at 818.) He opined that Plaintiff had a "questionable" prognosis, his symptoms included pain and immobility, and his pain or other symptoms would "frequently" be severe enough to interfere with his attention and concentration to perform "simple work tasks". (*Id.*) The statement noted that Plaintiff was able to sit "less than 2 hours" and stand/walk "less than 2 hours" in an 8-hour day, and that he could frequently lift/carry less than 50 pounds (*Id.*) He would also need to take unscheduled breaks every 2 hours throughout the workdays, his breaks would last anywhere between 15 to 60 minutes, and he would miss about 3 workdays a month due to his impairments or treatments. (*Id.*) Pain Doctor's statement was not accompanied by any explanatory notes or supporting objective tests and examinations.

C.  **Psychological and Psychiatric Evidence**

At his seven pain management visits between January and August 2020, Plaintiff had a Patient Health Questionnaire 9 (PHQ-9) score of 0 out of 21. (*Id.* at 593-98, 600-28, 709-14.) He denied nervousness, anxiety, depression, sleep disturbances, or suicidal ideation, and he had calm mood, normal affect, intact insight, and unimpaired judgment. (*Id.*) He had a reported history of anxiety disorder, not otherwise specified. (*Id.*)

At his August 2020 pain management visit, Plaintiff had normal psychosocial symptoms, specifically denied any anxiety, and was in "no distress". (*Id.* at 767, 804.)

On October 19, 2020, state agency psychological consultant (SAPC) Robert Clanton, Ph.D., completed a psychiatric review technique based on Plaintiff's medical record. (*Id.* at 86-97.) He concluded that Plaintiff had no medically determinable mental impairment. (*Id.* at 93.)

On February 26, 2021, Plaintiff visited Veterans Affairs for a mental health diagnostic, which was conducted by Caroline C. Ndumele, MSN, PMHNP-BC (Nurse Practitioner). (*Id.* at 824-831.) His PHQ-9 score was 16 out of 21, indicating moderately severe depression. (*Id.* at 826-27.) His Generalized Anxiety Disorder 7 (GAD-7) score was 10 out of 21, indicating "moderate" anxiety. (*Id.* at 824-25, 829-30.) He reported a history of military service, family conflict, isolation, back surgery, and chronic back pain, and he endorsed "mod[erate]" symptoms of depression and anxiety, poor sleep, and intermittent anger and irritability, which had increased since he had stopped working, but he had no history of mental health treatment or hospitalization. (*Id.* at 828-29.) He was reportedly told to "find another job", but it was "not easy" after 17 years of working as a truck driver. (*Id.* at 829.) On mental status examination, he was calm, cooperative, and well groomed, and he had good eye contact, stable affect, average intellect, fair judgment, and intact concentration for conversation. (*Id.* at 830.) He recalled three of three words "at 5 min[utes]", his

speech was normal in rate and clear with coherent thought process, and he denied any hallucinations or distress. (*Id.* at 830-31.) He was found to "not lack cognitive ability" to make relevant decisions and to "not have … mental impairments that increase [his] risk of harm to self or others". (*Id.* at 832.) Nurse Practitioner diagnosed him with adjustment disorder with mixed anxiety and depressed mood, and she advised him to engage in good sleep hygiene and general stress management exercises. (*Id.* at 831.) She found that Plaintiff "may" benefit from psychotherapy and/or pharmacotherapy, but he declined psychotropic medications. (*Id.*)

**D.  <u>April 6, 2021 Hearing</u>**

On April 6, 2021, Plaintiff and a vocational expert (VE) both testified at a hearing before the ALJ. (*Id.* at 55-76.) Plaintiff was represented by an attorney. (*Id.*)[6]

### *1.  Plaintiff's Testimony*

Plaintiff testified that he could not work due to back pain which he rated as 9.5/10. (*Id.* at 66-69.) He had back surgery in 2016, and he used a back brace daily, as well as a transcutaneous electrical nerve stimulation (TENS) machine at most twice a day. (*Id.* at 66.) He found it hard to twist or bend; he had radiating pain down to his legs (with more on his left side), and his left leg and left foot went "completely" numb after standing for 15 minutes, requiring him to sit for 20 to 25 minutes. (*Id.* at 66-67.) He had to sit at a "certain angle" because if he sat "straight up" for a "long" time, his back would lock up and cause him pain; he could sit for 25 minutes depending on how he sat. (*Id.* at 67.) His back pain prevented him from doing house chores and yard work, and he no longer played any sports or pool due to back pain. (*Id.* at 67-68.) He ordered a ride share or got a ride from his son or wife to go grocery shopping or to his medical appointments; he no longer

---

[6] The ALJ asked Plaintiff's attorney whether he would "includ[e] any mental issues for [Plaintiff] in this case" or whether the issues were only physical. (doc. 13-1 at 70.) The attorney responded that Plaintiff "does have mixed anxiety and depressed mood but that's based off the symptoms and the medications that he's taking." (*Id.*)

drove or went out alone because his medication impaired his driving. (*Id.* at 69.)

### 2. VE's Testimony

The VE found that Plaintiff had past relevant work as a tractor trailer truck driver (DOT 904.383-010, semi-skilled, SVP-4), which was at a medium or heavy exertional level, depending on the freight delivery. (*Id.* at 70.)

The VE first considered a hypothetical individual with Plaintiff's age, education, and background who could perform work at the light exertional level, except he could lift up to 20 pounds occasionally and 10 pounds frequently, stand and walk for 4 hours, sit for 6 hours, push and pull with no restrictions, and occasionally stoop, balance, kneel, crouch, crawl, and climb stairs but never climb ladders. (*Id.* at 70-71.) She opined that the individual could not perform past relevant work, but he could perform work as a bench assembler (DOT 706.684.042, light, SVP-2), with 96,000 jobs nationally; inspector (DOT 529.687-114, light, SVP-2), with 120,000 jobs nationally; and cashier II (DOT 211.462-010, light, SVP-2), with 400,000 jobs nationally. (*Id.* at 71.) The VE explained that the two former two positions typically included a sit/stand option, requiring no reduction in the number of national jobs available. (*Id.* at 72.) A cashier II job in parking lots, self-service gasoline stations, and smaller stores (but not in convenience stores or grocery stores) could be modified to include a "sit/stand" position; the number of cashier II jobs available had already been reduced by 60 percent to account for the modification. (*Id.*)

The same hypothetical individual, who could also follow simple oral and written instructions and detailed instructions, interact with the public, coworkers, and supervisors, comply with job rules, and respond to changes in a routine work setting, could perform the identified jobs. (*Id.* at 72-73.) The same hypothetical individual, but who was limited to 3 hours of standing and walking, could still perform the identified jobs, and there would not be "any significan[t]" or

"substantial[]" reduction in the number of jobs available. (*Id.*)

On cross-examination, the VE opined that absenteeism of "more than one day per month on a consistent basis" would erode the base of work in the national economy. (*Id.* at 76.) Employers' tolerance for off-task behavior was limited to 15 percent. (*Id.*)

The VE was familiar with the Social Security Administration's definitions of the exertional levels of work and with jobs that exist in the national economy. (*Id.* at 69-70.) His testimony was consistent with the DOT, the Selected Characteristics of Occupations, the Occupational Employment Survey, and his professional judgment, except the issues of absenteeism and reduction in standing and walking were based solely on his professional judgment. (*Id.* at 75.)

### E.  **ALJ's Findings**

The ALJ issued an unfavorable decision on May 12, 2021. (*Id.* at 41-50.) At step one, she found that Plaintiff had not engaged in substantial gainful activity since March 4, 2020, his amended alleged onset date. (*Id.* at 43.) At step two, she found the severe impairments of degenerative disc disease and obesity and the non-severe impairment of adjustment disorder. (*Id.* at 43-44.) Despite those impairments, the ALJ found at step three that Plaintiff had no impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in the social security regulations. (*Id.* at 44.) She explicitly considered Listing 1.15. (*Id.* at 45.)

Next, the ALJ determined that Plaintiff had the RFC to perform light work, as defined in 20 C.F.R. § 404.1567(b), except he could:

> lift/carry up to twenty pounds occasionally and ten pounds frequently; stand/walk for four hours in an eight-hour day; sit for six hours in an eight-hour day; push[] and pull[] [without limitation]; occasionally climb stairs; occasionally stoop, balance, kneel, crouch, crawl; never climb ladders.

(*Id.*) At step four, she found that Plaintiff could not perform his past relevant work. (*Id.* at 48.) At

step five, she found that considering Plaintiff's age, education, work experience, and RFC, he could perform other jobs that existed in significant numbers in the national economy. (*Id.* at 49.) Accordingly, the ALJ determined that Plaintiff had not been under a disability, as defined by the Social Security Act, from March 4, 2020, through the date of her decision. (*Id.* at 50.)

## II.    STANDARD OF REVIEW

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); 42 U.S.C. §§ 405(g), 1383(C)(3). Substantial evidence is defined as more than a scintilla, less than a preponderance, and as being such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). In applying the substantial evidence standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236. A finding of no substantial evidence is appropriate only if there is a conspicuous absence of credible evidentiary choices or contrary medical findings to support the Commissioner's decision. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988) (per curiam).

The scope of judicial review of a decision under the supplemental security income program is identical to that of a decision under the social security disability program. *Davis v. Heckler*, 759 F.2d 432, 435 (5th Cir. 1985). Moreover, the relevant law and regulations governing the determination of disability under a claim for disability insurance benefits are identical to those governing the determination under a claim for supplemental security income. *See id.* The court may therefore rely on decisions in both areas without distinction in reviewing an ALJ's decision.

*See id.*

To be entitled to social security benefits, a claimant must prove that he or she is disabled as defined by the Social Security Act. *Leggett*, 67 F.3d at 563-64; *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988). The definition of disability under the Social Security Act is "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

The Commissioner utilizes a sequential five-step inquiry to determine whether a claimant is disabled:

1. An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings.

2. An individual who does not have a "severe impairment" will not be found to be disabled.

3. An individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors.

4. If an individual is capable of performing the work he has done in the past, a finding of "not disabled" must be made.

5. If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if work can be performed.

*Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. § 404.1520(b)-(f)).

Under the first four steps of the analysis, the burden lies with the claimant to prove disability. *Leggett*, 67 F.3d at 564. The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id.* Once the claimant satisfies his or her burden under the first four steps, the burden shifts to the Commissioner at step

10

five to show that there is other gainful employment available in the national economy that the claimant is capable of performing. *Greenspan*, 38 F.3d at 236. This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987). A finding that a claimant is not disabled at any point in the five-step review is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

### III.    ISSUES FOR REVIEW

Plaintiff raises three issues for review:

1. The ALJ failed to properly evaluate the opinion evidence.
2. The ALJ's mental RFC was not supported by substantial evidence because the ALJ failed to order a consultative examination or otherwise solicit expert medical opinion.
3. The ALJ failed to conduct a proper analysis of Plaintiff's subjective symptom testimony.

(doc. 19 at 5-6.)

### A.  **Medical Opinion Evidence**

Plaintiff argues that the ALJ's "articulation of the persuasive value of [Pain Doctor]'s opinion was not based on substantial evidence". (*Id.* at 12.)

The Commissioner is entrusted to make determinations regarding disability, including weighing inconsistent evidence. 20 C.F.R. §§ 404.1529, 416.929. Every medical opinion is evaluated regardless of its source, but the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [his] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). A medical opinion is a statement from a medical source about what the claimant can still do despite his impairments and whether he has one or more impairment-related limitations or restrictions in the ability to perform common demands of work. 20 C.F.R. §§ 404.1513(a)(2),

416.913(a)(2).

The guidelines provide that the ALJ will explain in her determination or decision how persuasive she finds "all of the medical opinions and all of the prior administrative medical findings in [the] case record."[7] 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b). Five factors are considered in evaluating the persuasiveness of the medical opinion(s): (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors which "tend to support or contradict the opinion." 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5). The most important factors to consider when evaluating the persuasiveness of medical opinions and prior administrative medical findings are supportability and consistency. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Supportability concerns the degree to which the objective medical evidence and supporting explanations of the medical source support the medical source's own opinions, while consistency concerns the degree to which the medical source's opinion is consistent with the evidence from other medical sources and nonmedical sources within the record. *See* 20 C.F.R. §§ 404.1520c(c)(1)-(2), 416.920c(c)(1)-(2). The ALJ must explain how she "considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in [the] determination or decision." 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).[8]

"There is limited case law concerning what constitutes a sufficient 'explanation' of supportability and consistency under 20 C.F.R. § 404.1520c(b)(2)." *Georgopoulos v. Comm'r,*

---

[7] When a medical source provides multiple medical opinions, the ALJ will articulate how she "considered the medical opinions or prior administrative medical findings from that medical source together in a single analysis using the factors," but she is not required to articulate how she considered each medical opinion or prior administrative medical finding from one medical source individually. 20 C.F.R. §§ 404.1520c(b)(1), 416.920c(b)(1).

[8] She may, but is not required to, explain how she considered the remaining factors. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

*SSA*, No. 4:21-CV-00192ALMCAN, 2022 WL 3023247, at *8 (E.D. Tex. July 8, 2022), *report and recommendation adopted*, No. 4:21-CV-192, 2022 WL 3018417 (E.D. Tex. July 29, 2022); *see also Hubbard v. Comm'r of Soc. Sec.*, No. 4:20-CV-00588-BP, 2022 WL 196297, at *3 (N.D. Tex. Jan. 21, 2022) (same) (citation omitted).

> The measuring stick for an 'adequate discussion' is whether the ALJ's persuasiveness explanation enables the court to undertake a meaningful review of whether h[er] finding with regard to the particular medical opinion was supported by substantial evidence, and does not require the [c]ourt to merely speculate about the reasons behind the ALJ's persuasiveness finding or lack thereof.

*Georgopoulos*, 2022 WL 3023247, at *9 (citing *Luckett v. Kijakazi*, No. 4:20-CV-04002, 2021 WL 5545233, at *4 (S.D. Tex. Nov. 26, 2021) (in turn citing *Cooley v. Comm'r of Soc. Sec.*, No. 2:20-CV-46-RPM, 2021 WL 4221620, at *6 (S.D. Miss. Sept. 15, 2021) (citations omitted)); *see also Pearson v. Comm'r*, No. 1:20-CV-166-HSO-RPM, 2021 WL 3708047, at *5 (S.D. Miss. Aug. 11, 2021) ("Stated differently, there must be a discernible 'logic bridge' between the evidence and the ALJ's persuasiveness finding.") (citation omitted)). "At a minimum, the ALJ's discussion must give enough reasons to permit meaningful judicial review." *Dominick S. v. Kijakazi*, No. 3:20-CV-03473-E-BT, 2022 WL 2874705, at *4 (N.D. Tex. May 12, 2022), *report and recommendation adopted sub nom. Simonetti v. Kijakazi*, No. 3:20-CV-03473-E-BT, 2022 WL 2872490 (N.D. Tex. July 20, 2022) (citation omitted); *see Gonzales v. Kijakazi*, No. 4:20-CV-00270, 2021 WL 3777181, at *3 (S.D. Tex. Aug. 3, 2021) (finding the ALJ's "quite brief" and "cursory explanation" of the supportability and consistency of a medical opinion satisfied the discussion requirement under § 404.1520c because it "discusse[d] medical evidence that is not consistent with and does not support the [treating physician's] opinion" on plaintiff's breathing limitations). The ALJ evaluates the persuasiveness of the opinions when determining disability, and the sole responsibility for a disability determination rests with her. *See Newton v. Apfel*, 209 F.3d 448, 455

(5th Cir. 2000) (citation omitted); *see also* Social Security Ruling (SSR) 96-6p, 1996 WL 374180, at *4 (S.S.A. July 2, 1996).

The Fifth Circuit has recognized that opinions of treating physicians are not entitled to considerable weight when they are "brief and conclusory" and "lack 'explanatory notes' or 'supporting objective tests and examinations.'" *See Heck v. Colvin*, 674 F. App'x 411, 415 (5th Cir. 2017) (citing *Foster v. Astrue*, 410 F. App'x 831, 833 (5th Cir. 2011)). District courts in this circuit have found that under the new regulations, "brief and conclusory" opinions unsupported by relevant medical evidence lack supportability. *See*, *e.g.*, *Bruen v. Kijakazi*, No. 1:20-CV-278 LGI, 2022 WL 452411, at *3 (S.D. Miss. Feb. 14, 2022) (citing *Holifield v. Astrue*, 402 F. App'x 24, 26 (5th Cir. 2010), to find that "[f]orm reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best.... [but when] these so-called reports 'are unaccompanied by thorough written reports, their reliability is suspect'"); *Benson v. Saul*, No. 3:20-CV-1974-E-BH, 2022 WL 868706, at *16 (N.D. Tex. Mar. 8, 2022), *report and recommendation adopted*, No. 3:20-CV-1974-E-BH, 2022 WL 865886 (N.D. Tex. Mar. 23, 2022) (finding that the lack of persuasiveness of the check-box form goes to its lack of supportability); *Stephens v. Saul*, No. 3:20-CV-823-BH, 2020 WL 7122860 *8 (N.D. Tex. Dec. 4, 2020) (citing *Heck*, 674 F. App'x at 415, and *Foster*, 410 F. App'x at 833, and illustrating how less persuasive a "brief and conclusory" check-box questionnaire stands in comparison to a narrative statement, which contains substantive explanation).

Some of these courts have found that the ALJ satisfies the required discussion on the supportability and consistency of "brief and conclusory" opinions "lack[ing] 'explanatory notes' or 'supporting objective tests and examinations'" when her decision reflects consideration of these two factors as well as a review and analysis of the objective record. *See Anthony D. v. Comm'r*

*Soc. Sec. Admin.*, No. 3:19-CV-2900-X-BK, 2021 WL 9315235, at *5 (N.D. Tex. Aug. 25, 2021) (citing *Stephens*, 2020 WL 7122860, at *7, and finding that "[d]etails about why the ALJ gave a specific opinion little weight, combined with the entire review and analysis of the objective record, can satisfy the ALJ's duty under the regulations"), *report and recommendation adopted sub nom. Anthony D. v. Comm'r, Soc. Sec. Admin.*, No. 3:19-CV-2900-X-BK, 2022 WL 2900999 (N.D. Tex. July 22, 2022) (agreeing with the magistrate judge that "[w]hile the ALJ must explain how she considered the supportability and consistency factors for a medical source's medical opinions, there are no magic words or specific amount of explanation required" and finding that "the [ALJ] complied with the regulatory requirement that she explain how she considered the supportability and consistency factors with regard to Dr. Mabile's opinion"); *see also Nugent v. Astrue*, 278 F. App'x 423, 427 (5th Cir. 2008) (unpublished) (citing *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987) (reported) (concluding that an ALJ may rely on a well-supported physician's opinion over a poorly supported treating physician's opinion)).

Here, although the ALJ did not make a specific finding as to each of the factors in 20 C.F.R. § 404.1520c(c)(1)-(5), she specifically stated that she considered the opinion evidence and prior administrative medical findings in accordance with the requirements of § 404.1520c, and her decision reflects consideration of supportability and consistency, the two most important factors in evaluating the persuasiveness of medical opinions. (doc. 13-1 at 45.)

From January 2020 to August 2020, Pain Doctor examined and/or treated Plaintiff for pain management 8 times. (*Id.* at 593-98, 600-28, 709-17.) The ALJ summarized his treatment notes:

> [Plaintiff] ha[d] pain management with provider [Pain Doctor] for subjective report of low back pain, caused objectively by post-laminectomy syndrome. On March 2, 2020, [Plaintiff] told [Pain Doctor] that he cannot take his pain medication when he is driving for work. [Plaintiff] reported a left-sided decrease in his ability to function, range of motion, and mobility, since a prior surgery. However, he also reported an 80 to 90 percent improvement in his pain with physical therapy and aquatic exercises. On examination,

[Pain Doctor] found [Plaintiff] to have reduced range of motion in the lumbar spine, positive bilateral straight-leg raise test, positive femoral nerve traction test for both legs, positive Patrick-Fabere test bilaterally, but no paraspinal muscle atrophy or weakness, and no spasms of the paraspinal muscles. [Pain Doctor] continued to make the same or similar examination findings throughout office visits in 2020. Strength in the upper and lower extremities was full at 5 out of 5. [Plaintiff] received [ESI]s and he reports that his medication is effective in treating his symptoms. However, he [reported that he] cannot work as a truck driver when taking prescribed pain medication, because of restrictions on driving while using narcotics.

(*Id.* at 47) (internal citations omitted). She specifically concluded that Pain Doctor's finding that Plaintiff could not work as a truck driver due to the narcotics restriction "d[id] not suggest that he is precluded from all work". (*Id.*)

The ALJ also considered Pain Doctor's December 2020 medical source statement, noting:

[Pain Doctor] found [Plaintiff] capable of sitting less than two hours in an eight-hour day[] and standing/walking less than two hours in an eight-hour day. [Pain Doctor] explained that [Plaintiff] has post-laminectomy syndrome and spinal stenosis, with a "questionable" prognosis, causing pain and immobility. [Pain Doctor] found that [Plaintiff]'s pain would frequently be severe enough to interfere with his attention and concentration to perform even simple tasks.

(*Id.* at 48) (internal citations omitted and emphasis added). While not discussed by the ALJ, Pain Doctor also opined that Plaintiff could frequently lift/carry less than 50 pounds, he would require unscheduled breaks (lasting anywhere between 15 to 60 minutes) after 2 hours of standing/walking or sitting, and he would miss about 3 workdays per month due to his impairments or treatments. (*Id.* at 818.) The ALJ assessed the persuasiveness of Pain Doctor's opinion as follows:

[I] find[] this [opinion] not persuasive because it is *not well-supported* by the evidence relied upon in explanation of the opinion, and it is *not consistent* with the updated evidence in the record from other sources. On examination, [Pain Doctor] found [Plaintiff] to have reduced range of motion in the lumbar spine, positive bilateral straight-leg raise test, positive femoral nerve traction test for both legs, positive Patrick-Fabere test bilaterally, but no paraspinal muscle atrophy or weakness, and no spasms of the paraspinal muscles. [Pain Doctor] continued to make the same or similar examination findings throughout office visits in 2020. Strength in the upper and lower extremities was full at 5 out of 5. [Plaintiff] does not use an assistive device to ambulate or balance. Considering other factors, [Pain Doctor] is [Plaintiff]'s pain management provider, and [Pain Doctor] has examined him frequently. Based primarily on the *supportability* and *consistency* of the

opinion, [I] find[] it not persuasive.

(*Id.* at 48) (internal citations omitted and emphasis added).

The ALJ specifically cited and discussed Pain Doctor's findings that Plaintiff had no paraspinal muscle atrophy, weakness, or spasms during all 2020 visits despite having left lower extremity weakness in August 2020 and abnormal gait and station in all but one visit in 2020. (*Id.* at 47-48.) Although these treatment notes support a diagnosis of post-laminectomy syndrome, which the ALJ accepted in finding that Plaintiff had a severe back impairment, they do not necessarily support the extreme limitations that Pain Doctor opined in his medical statement. *See Glass v. Comm'r of Soc. Sec.*, No. 2:20-CV-207-TBM-RPM, 2022 WL 990223, at *4 (S.D. Miss. Mar. 31, 2022) (finding that Dr. Taylor's treatment notes "merely support a diagnosis of arthritis", which the ALJ found was a severe impairment, and "do not necessarily support the extreme limitations that Dr. Taylor proposed in his medical opinion"). "The ALJ adequately explained how [Pain Doctor]'s medical opinion was not supported with his own notes that [Plaintiff] was responding positively to the medication that [Pain Doctor] prescribed, and the ALJ's determination was supported by substantial evidence." *Id.* (citing *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001) ("[P]ain must be constant, unremitting, and wholly unresponsive to therapeutic treatment to be disabling.").

As to consistency, earlier in her decision, the ALJ considered Plaintiff's hearing testimony that he could stand 15 minutes at most, sit "at a certain angle" for 25 minutes at most, used a back brace and a TENS machine for back pain relief daily, and got a ride from family members for grocery shopping. (*Id.* at 46.) The ALJ considered his testimony and agreed that his back impairment could reasonably be expected to cause his alleged symptoms, but she found that his statements were not necessarily consistent with the extreme physical limitations that Pain Doctor

opined he had. (*Compare id.* at 818, *with id.* at 46-48, 67-68.) "By showing specific areas where [Pain Doctor]'s opinion was either inconsistent [with] or unsupported by the rest of the evidentiary record, the ALJ satisfied her minimal explanatory burden under the Commissioner's guidelines." *Cooper v. Comm'r of Soc. Sec.*, No. 7:21-CV-00104-O-BP, 2022 WL 4538315, at *4 (N.D. Tex. July 15, 2022) (citing 20 C.F.R. § 404.1520c), *report and recommendation adopted*, No. 7:21-CV-00104-O-BP, 2022 WL 4538460 (N.D. Tex. Sept. 27, 2022); *see also Jones v. Colvin*, No. 4:13-CV-818-A, 2015 WL 631670, at *4 (N.D. Tex. Feb. 13, 2015) (finding that the "internal inconsistencies" between a physician's examination and her medical source statement, as well as the "inconsistencies" between her treatment records and the other medical evidence of record, went to the supportability and consistency of her opinion under the prior regulations). Accordingly, the ALJ's reasons for finding Pain Doctor's medical source statement "not persuasive", combined with her review and analysis of the objective record, satisfy her duty under the regulations. *See Anthony D.*, 2021 WL 9315235, at *5; *see also Britton v. Saul*, 827 F. App'x 426, 430 (5th Cir. 2020) (finding that it is the ALJ's responsibility to assess the medical evidence provided in a case). Because Pain Doctor's medical source statement is a brief and conclusory check-box form that does not state how his treatment notes supported the limitations he identified, the ALJ could properly determine that his records did not support the severity of limitations opined by Pain Doctor. *See Foster*, 410 F. App'x at 833; *Fletcher*, 2022 WL 3130860, at *9 n.8; *Stephens*, 2020 WL 7122860, at *20.

The ALJ instead relied on the SAMCs' opinions that limited Plaintiff to light work exertional limitations (i.e., sitting, standing, and walking) and/or weight limitations (20 pounds occasionally, 10 pounds frequently, and unlimited pushing and pulling) and postural limitations (occasionally stoop, balance, kneel, crouch, crawl, and climb stairs but never climb ladders). (doc.

13-1 at 45.) She explained that the SAMCs made specific references to the record, their opinions were supported by the evidence cited, and their opinions were consistent with Pain Doctor's treatment notes. (*Compare id.* at 47-48, *with id.* at 77-84, 86-97); *see*, *e.g., Audler v. Astrue*, 501 F.3d 446, 447 (5th Cir. 2007) (finding that the ALJ properly exercised his responsibility as fact finder to weigh the evidence and incorporate limitations in his RFC assessment that the record supported); *Griego v. Sullivan*, 940 F.2d 942, 945 (5th Cir. 1991) ("It was within the discretion of the ALJ to determine the credibility of the various medical reports in the record, and we find substantial evidence in support of his conclusions."); *Guess v. Colvin*, No. CV 15-2318, 2016 WL 8679251, at *7 (W.D. La. July 15, 2016) (affirming the ALJ's reliance, in part, on "the more-detailed assessment of the non-examining medical expert" instead of plaintiff's treating pain management specialist), *report and recommendation adopted*, No. CV 15-2318, 2016 WL 4487789 (W.D. La. Aug. 25, 2016).

In conclusion, because the ALJ's decision considered the supportability and consistency of the opinions of Pain Doctor and the SAMCs and gave "careful consideration of the entire record", including the medical and non-medical evidence and prior administrative medical findings, in accordance with the requirements of 20 C.F.R. § 404.1520c, her RFC determination is supported by substantial evidence. *See*, *e.g., Hill v. Saul*, No. 3:20-CV-1914-BH, 2022 WL 975608, at *14 (N.D. Tex. Mar. 30, 2022) (finding that the ALJ properly addressed the supportability and consistency factors and that because his RFC determination was based on medical evidence in record, it was supported by substantial evidence); *Georgopoulos*, 2022 WL 3023247, at *9 (same); *Glass*, 2022 WL 990223, at *4-5 (finding that the ALJ properly considered the persuasiveness of doctor's opinion that was not supported by his own treatment notes and was inconsistent with other providers' objective medical evidence and medical opinion evidence in the record). Because the

19

ALJ failed to properly evaluate the opinion evidence, remand is not warranted on this issue.

**B.  Duty to Develop the Record**

Plaintiff argues that the ALJ's "mental RFC was not supported by substantial evidence because the ALJ failed to order a consultative examination or otherwise solicit expert medical opinion." (doc. 19 at 17.)

The ALJ has a duty to fully and fairly develop the facts relative to a claim for benefits. *Newton*, 209 F.3d at 458 (citing *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995)). When the ALJ fails in this duty, she does not have before her sufficient facts upon which to make an informed decision, and her decision is not supported by substantial evidence. *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996); *Kane v. Heckler*, 731 F.2d 1216, 1219 (5th Cir. 1984). For this reason, a reviewing court "will reverse the ALJ's decision ... if the claimant shows that (1) the ALJ failed to fulfill his duty to develop the record adequately and (2) that failure prejudiced the plaintiff."[9] *Jones v. Astrue*, 691 F.3d 730, 733 (5th Cir. 2012) (citing *Brock*, 84 F.3d at 728). The duty to obtain medical records generally belongs to the claimant, however. *See Gonzalez v. Barnhart*, 51 F. App'x 484 (5th Cir. 2002); *Hawkins v. Astrue*, No. 3:09-CV-2094-BD, 2011 WL 1107205 at *7 (N.D. Tex. Mar. 25, 2011).

"The decision to order a consultative examination is within the ALJ's bailiwick." *Harper v. Barnhart*, 176 F. App'x 562, 566 (5th Cir. 2006). "An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-60 (5th Cir. 2001) (emphasis added). A consultative examination is required "only if the record establishes that such

---

[9] "To establish prejudice, a claimant must show that he could and would have adduced evidence that might have altered the result." *Hardine v. Kijakazi*, No. 21-60226, 2022 WL 2070399, at *2 (5th Cir. 2022) (quoting *Brock*, 84 F.3d at 728 (internal quotation marks omitted)).

an examination is *necessary* to enable [her] to make the disability decision". *Hardman v. Colvin*, 820 F.3d 142, 148 (5th Cir. 2016) (emphasis in original) (citing *Jones v. Bowen*, 829 F.2d 524, 526 (5th Cir. 1987) (per curiam); *see Hardine v. Kijakazi*, No. 21-60226, 2022 WL 2070399, at *2 (5th Cir. 2022) (citing 20 C.F.R. § 404.1519a(b), and holding a consultative examination "may be required 'to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow [the Social Security Administration] to make a determination or decision on [a] claim'")).

In the Fifth Circuit, a consultative evaluation is not necessary when the record supports a conclusion that the claimant is not disabled. *See Brock*, 84 F.3d at 728 (citing *Turner v. Califano*, 563 F.2d 669, 671 (5th Cir. 1977)). Further, it is not required unless the record raises a "suspicion" concerning an impairment. *See Jones*, 829 F.2d at 526 (citing 20 C.F.R. § 416.1444). Isolated comments in the record about a claimant's impairment are not sufficient to raise a suspicion of an impairment. *See Pierre v. Sullivan*, 884 F.2d 799, 802-03 (5th Cir. 1989) (per curiam) (holding that "[a] few instances in the record noting diminished intelligence" were insufficient to raise suspicion that claimant had a mental disability) (citations omitted); *Brock*, 84 F.3d at 728 (holding claimant's references amounted to isolated comments because he did not mention nonexertional impairments in his original request for benefits, never sought medical treatment for such impairments, and did not mention these impairments at his hearing). Moreover, the duty to develop the record can be met through the ALJ's questioning of the claimant regarding his education, training, past work history, the circumstances of his injury, daily routine, pain, and physical limitations, and providing an opportunity to add anything else to the record. *See Sun v. Colvin*, 793 F.3d 502, 509 (5th Cir. 2015) ("Consistent with that description, the court often focuses on the ALJ's questioning of the claimant in order to determine whether the ALJ gathered the information

21

necessary to make a disability determination.") (citing *Brock*, 84 F.3d at 728).

Here, the ALJ considered a medical record of more than 800 pages that included almost 4 years of treatment notes from Plaintiff's medical visits and laboratory findings, as well as the opinions of the SAMCs and Pain Doctor. (*See* doc. 13-1.) There is no indication that the evidence before her was ambiguous, inadequate, or inconsistent, or that she lacked sufficient facts upon which to make a disability decision. *See Hardine*, 2022 WL 2070399, *2; *Mayes*, 276 F.3d at 459-60. Rather, "[a]fter careful consideration of the entire record", the ALJ noted that Plaintiff's only mental health visit occurred in February 2021, and that while he was diagnosed with adjustment disorder with mixed and depressed mood, he had a normal mental status examination, and his recommended treatment merely included practicing good sleep hygiene and general stress management exercises. (doc. 13-1 at 42, 44-46.) The ALJ also noted that he declined any psychotropic medications. (*Id.*) Considering that "[t]here [wa]s no documentation of any further treatment for mental health" and "[g]iven the normal mental status examination findings", the ALJ found that Plaintiff's condition was non-severe and that it "cause[d] no limitations in his ability to perform basic work-related tasks". (*Id.*)

In addition, the ALJ concluded that Plaintiff's subjective reports of disabling mental symptoms were not entirely consistent with the medical evidence and other evidence in the record. (doc. 13-1 at 46.) In doing so, she properly considered the other medical and opinion evidence in the record, including treatment notes, laboratory findings, the findings by the SAMCs and Pain Doctor, and his own testimony, to interpret the medical evidence and determine his RFC. (*Id.* at 41-50); *Taylor v. Astrue*, 706 F.3d 600, 602-03 (5th Cir. 2012) ("What [the plaintiff] characterizes as the ALJ substituting his opinion is actually the ALJ properly interpreting the medical evidence to determine his capacity for work."). Accordingly, the ALJ was not required to order a

consultative examination; there is substantial evidence to support her RFC determination that excludes any mental limitations. *See Sims v. Apfel*, 224 F.3d 380, 381 (5th Cir. 2000) (rejecting claimant's argument that the ALJ should have ordered a consultative examination because it was "readily apparent" that the record contained "sufficient medical and non-medical evidence upon which to base a determination" of claimant's mental problems"); *Smith v. Berryhill*, No. CV H-18-2490, 2019 WL 3557586, at *9 (S.D. Tex. July 11, 2019), *report and recommendation adopted*, No. CV H-18-2490, 2019 WL 3548850 (S.D. Tex. Aug. 5, 2019) (finding that the ALJ was not obligated to order a consultative examination).

Moreover, because Plaintiff was represented by counsel at the hearing, no "heightened duty to scrupulously and consciensiously explore all relevant facts" arose. *Castillo v. Barnhart*, 325 F.3d 550, 552-53 (5th Cir. 2003) (per curiam); *see Isbell v. Colvin*, No. 1:14-CV-006-C, 2015 WL 1208122, at *3 n.1 (N.D. Tex. Mar. 16, 2015) (noting that the ALJ did not have a heightened duty to develop the record where the claimant was represented by counsel). As noted, the burden lies with the claimant to prove disability. *Leggett*, 67 F.3d at 564. Plaintiff has not demonstrated how a consultative examination would have led to a more favorable decision. The ALJ fulfilled her duty to fully and fairly develop the record, and remand is not required on this issue.[10]

## C. Subjective Complaints/Symptoms

Lastly, Plaintiff contends that the ALJ failed to properly analyze his subjective symptom

---

[10] Even if the ALJ should have ordered a consultative examination, Plaintiff has also not shown prejudice. As noted, prejudice is established when a plaintiff shows that a consultative examination "could and would have adduced evidence that might have altered the result". *Hardine*, 2022 WL 2070399, at *2 (citing *Brock*, 84 F.3d at 728 (quotation omitted)). Here, Plaintiff does not offer any argument or evidence to show "how additional consultative examinations would have led to a more favorable decision." *Stanley v. Comm'r of Soc. Sec.*, No. 4:22-CV-00527, 2023 WL 2457534, at *5 (S.D. Tex. Mar. 10, 2023) (citing *Williams v. Berryhill*, No. 3:18-CV-1913, 2019 WL 4393635, at *13 (N.D. Tex. Sept. 13, 2019)). The record instead shows conservative treatment, minimal subjective complaints, and normal mental examinations. (doc. 13-1); *see Thompson v. Colvin*, No. 4:12-CV-466-Y, 2013 WL 4035229, at *6 (N.D. Tex. Aug. 8, 2013). Any error was therefore harmless.

testimony. (doc. 19 at 20.)

Under the Social Security Regulations, the ALJ is required to follow a two-step process for evaluating a claimant's subjective complaints. *See* 20 C.F.R. §§ 404.1429, 416.929; SSR 16-3p, 2017 WL 5180304, at *2-3 (S.S.A. Oct. 25, 2017).[11] First, the ALJ must consider whether the claimant had a medically determinable impairment that could reasonably be expected to produce the alleged symptoms. *See* SSR 16-3p, 2017 WL 5180304, at *3-4. Once such an impairment is shown, the ALJ must evaluate the intensity, persistence, and limiting effects of the alleged symptoms to determine the extent to which they limit the individual's ability to do basic work activities. *See id.* at *4-5. The ALJ is to consider the entire record, including medical signs and laboratory findings, and statements by the claimant and his treating or examining sources concerning the alleged symptoms and their effect. *See id.* at *5-7. The ALJ must also consider a non-exclusive list of seven relevant factors in evaluating the intensity, persistence, and limiting effects of a claimant's symptoms:

1. Daily activities;
2. The location, duration, frequency, and intensity of pain or other symptoms;
3. Factors that precipitate and aggravate symptoms;
4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;
5. Treatment, other than medication, an individual uses or has used to relieve pain or other symptoms;
6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
7. Any other factors concerning an individual's functional limitations and restrictions due

---

[11] Effective March 2017, the Social Security Administration issued SSR 16-3p, which eliminated the "use of the term 'credibility' from [its] sub-regulatory policy," clarifying "that subjective symptom evaluation is not an examination of an individual's character." *See* 2017 WL 5180304. It instructs ALJs to determine "the extent to which ... symptoms can reasonably be accepted as consistent with the objective medical and other evidence in the [claimant's] record" and simply shifts the focus from a more general analysis of a claimant's truthfulness to an objective comparison of a claimant's statements to the evidence of record. *See Howard v. Berryhill*, No. 3:16-CV-318-BN, 2017 WL 551666, at *6 (N.D. Tex. Feb. 10, 2017). While SSR 16-3p explicitly supersedes SSR 96-7p, 1996 WL 374186 (S.S.A. July 2, 1996), "it is evident that the change brought about by SSR 16-3p was mostly semantic." *Id.* at *7 (collecting cases).

to pain or other symptoms.

*Id.* at *7-8; *see also* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

Although the ALJ must give specific reasons for making this determination, "neither the regulation nor interpretive case law requires that an ALJ name, enumerate, and discuss each factor in outline or other rigid, mechanical form. It suffices when the administrative decision is sufficiently specific to make clear that the regulatory factors were considered." *Prince v. Barnhart*, 418 F. Supp. 2d 863, 871 (E.D. Tex. Sept. 9, 2005). Moreover, the Fifth Circuit has explicitly rejected the requirement that an ALJ "follow formalistic rules" when assessing a claimant's subjective complaints. *See Falco*, 27 F.3d at 163-64. The ALJ's evaluation of the credibility of subjective complaints is entitled to judicial deference. *See Carrier v. Sullivan*, 944 F.2d 243, 247 (5th Cir. 1991). The ALJ is in the best position to assess a claimant's credibility because she "enjoys the benefit of perceiving first-hand the claimant at the hearing." *Falco*, 27 F.3d at 164 n.18.

Here, the ALJ noted the proper standard and two-step analysis for evaluating subjective complaints and symptoms based on a consideration of the entire case record. (*See* doc. 13-1 at 45-46.) She then considered Plaintiff's hearing testimony, including his general complaints about his chronic back pain that radiated to his legs and his claims that he found it difficult to stand for more than 10 to 15 minutes, could sit at an angle for 15 to 25 minutes, no longer did house chores and yard work due to back pain, and got a ride with family for grocery shopping. (*Id.* at 46.) She also noted that he received only conservative treatment for his back pain with physical therapy, injections, and pain medication, the treatments reportedly improved his pain, and that he did not use an assistive device for ambulance or balance for support. (*Id.* at 47-48.) The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged

symptoms" his "statements concerning the intensity, persistence and limiting effects of these symptoms [we]re not entirely consistent with the medical evidence and other evidence in the record". (*Id.* at 46.)

### 1. Conservative Treatment

Plaintiff first contends that the ALJ's "rationale" about Plaintiff's symptoms is not supported by substantial evidence because "[she] mischaracterized the treatment as conservative". (doc. 19 at 21.) He relies on *Byrd v. Comm'r of Soc. Sec.*, 3:21-CV-96-JMV, 2022 WL 1084995, at *3-4 (N.D. Miss. Apr. 11, 2022), for the proposition that a medical record with *no* evidence of physical therapy, steroid injections, pain management, or surgical intervention indicated "conservative" treatment. (*Id.*) He concludes that his history of "failed" back surgery, injections, "continued" pain management, and diagnoses of failed back syndrome and post laminectomy syndrome in "no way" amounts to conservative treatment. (*Id.*)

Reported cases in the Fifth Circuit have found that substantial evidence supported a finding of conservative treatment despite, or because of, evidence of exercise programs, medical equipment, medication management, physical therapy, routine monitoring, or steroid injections. *See*, *e.g., Weary v. Astrue*, 288 F. App'x 961, 963 (5th Cir. 2008) (physical therapy); *Fields v. Sullivan*, 985 F.2d 557 (5th Cir. 1993) (injections and walking program); *Anthony*, 954 F.2d at 294-95 (medication); *Stafford v. Barnhart*, 402 F. Supp. 2d 717, 728 n.14 (E.D. Tex. Nov. 16, 2005) (recommendations for exercises); *Lastrape v. Barnhart*, 376 F. Supp. 2d 704, 714 (E.D. Tex. Mar. 24, 2005) (medication and symptom monitoring), *report and recommendation adopted* (E.D. Tex. Apr. 21, 2005); *Hector v. Barnhart*, 337 F. Supp. 2d 905, 917, 923 (S.D. Tex. Mar. 1, 2004) (elbow splint and medication with no evidence of ineffectiveness or side effects); *Barfield v. Barnhart*, 285 F. Supp. 2d 827, 830 (S.D. Tex. Aug. 8, 2002) (muscle relaxers and pain

medication).

Here, the ALJ noted Plaintiff's daily use of a back brace and a TENS machine to improve his pain, history of 80 to 90 percent improvement in his pain with physical therapy and aquatic exercises, recommended good sleep hygiene and general stress management exercises, and consistent reports of effective pain medication management, despite his need to skip dosages while driving tractor trailers. (doc. 13-1 at 46-47.) This evidence is consistent with Fifth Circuit findings that a claimant's treatment was conservative. *Weary*, 288 F. App'x at 963; *Fields*, 985 F.2d 557; *Anthony*, 954 F.2d at 294-95; *Stafford*, 402 F. Supp. 2d at 728 n.14; *Lastrape*, 376 F. Supp. 2d at 714; *Hector*, 337 F. Supp. 2d at 917, 923; *Barfield*, 285 F. Supp. 2d at 830.

Because Plaintiff has not shown that the ALJ erred in finding that his treatment was conservative, her decision is based on substantial evidence, and remand is not warranted on this issue. *See also Byrd*, 2022 WL 1084995, at *3-4 (citing *Parfait v. Bowen*, 803 F.2d 810, 813-14 (5th Cir. 1986) ("Evidence that a claimant receives conservative pain treatment substantially supports an ALJ's adverse credibility finding against complaints of incapacity and severe pain.")).

### 2. Effective Medical Treatment

Plaintiff also argues that the ALJ "discounted" his subjective testimony because his symptoms were not "controlled" by injections or medication. (doc. 19 at 21-22.) He does not brief this issue or present authority or evidence to support his argument, however. *Leggett*, 67 F.3d at 564 (noting the claimant's burden to prove disability under the first four steps of the analysis).

Even if he had presented evidence of ineffective medical treatment, his pain management treatment notes reflect that he endorsed effective medication treatment with no side-effects. (doc. 13-1 at 593-98, 600-28, 709-17); *see Johnson*, 864 F.2d at 348 (finding that when an impairment can reasonably be remedied or controlled by medication or treatment, it is not disabling and does

27

not affect the claimant's RFC). Plaintiff also endorsed 80 to 90 percent improvement with physical therapy and aquatic exercises. (doc. 13-1 at 593-98, 600-28, 709-17.) An inability to perform as a truck driver because of the narcotics restriction does not necessarily contradict the ALJ's finding that Plaintiff's medication treatment was effective. *Riera v. Berryhill*, No. CV 17-8694, 2018 WL 5274028, at *9 (E.D. La. Aug. 9, 2018) (citing *Clayborne v. Astrue*, 260 F. App'x 735, 737 (5th Cir. 2008), to hold that "whether Plaintiff was unable to return to her past job as a nurse while taking prescribed pain medication is not relevant"). Because Plaintiff has not shown that the ALJ discounted his subjective testimony or that his treatment was not effective, the ALJ's decision is supported by substantial evidence and remand is not warranted on this issue either.

### 3. *Consideration of Evidence*

Lastly, Plaintiff argues that the ALJ engaged in cherry-picking by ignoring Pain Doctor's findings that he had reduced lower extremity strength and abnormal gait and stance and his diagnosis of degenerative disc disease and post-laminectomy syndrome. (doc. 19 at 22.)

The Fifth Circuit has held that an "ALJ must consider all the record evidence and cannot 'pick and choose' only the evidence that supports his position." *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000) (citing *Switzer v. Heckler*, 742 F.2d 382, 385-86 (7th Cir. 1984)); *see also Garfield v. Schweiker*, 732 F.2d 605, 609 (7th Cir. 1984); *Green v. Shalala*, 852 F. Supp. 558, 568 (N.D. Tex. Apr. 18, 1994); *Armstrong v. Sullivan*, 814 F. Supp. 1364, 1373 (W.D. Tex. Feb. 11, 1993). Likewise, the substantial evidence test does not involve a simple search of the record for isolated bits of evidence that support the ALJ's decision. *Singletary v. Bowen*, 798 F.2d 818, 822-23 (5th Cir. 1986). An ALJ must address and make specific findings regarding the supporting and conflicting evidence, the weight to give that evidence, and reasons for his or her conclusions regarding the evidence. *Armstrong*, 814 F. Supp. at 1373. There is no general duty of explanation

or to provide rational and logical reasons for a decision, however. *Escalante v. Colvin*, No. 3:14-CV-0641-G-BH, 2015 WL 1443000, at *14 (N.D. Tex. Mar. 31, 2015) (citing cases). The regulations require only that an ALJ consider and evaluate medical opinions. *See* 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). They do not require an ALJ to state the weight given to each symptom and diagnosis in the administrative record. *See Proge v. Comm'r of Soc. Sec.*, No. 3:13-CV-310-SAA, 2014 WL 4639462, at *4 (N.D. Miss. Sept. 16, 2014) (applying 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2)).

Here, the ALJ explicitly considered Pain Doctor's treatment notes regarding Plaintiff's reduced range of motion in the lumbar spine, positive bilateral straight-leg raise test, positive femoral nerve traction test for both legs, positive Patrick-Fabere test bilaterally. (*See* doc. 13-1 at 47.) She also noted that Pain Doctor's pain management treatment was due to Plaintiff's post-laminectomy syndrome, and she specifically found Plaintiff's degenerative disc disease to be a severe impairment. (*Id.* at 43.) Accordingly, the ALJ *did* consider Pain Doctor's findings and diagnoses about Plaintiff's back impairment and lower extremity weakness, but "[t]he mere presence of some impairment is not disabling per se." *See Hames v. Heckler*, 707 F.2d 162, 165-66 (5th Cir. 1983) ("Plaintiff must show that []he was so functionally impaired by h[is] back trouble that []he was precluded from engaging in any substantial gainful activity …. It should also be noted that individuals capable of performing even light or sedentary work, despite back trouble, are not disabled under the Act.") (internal citations omitted). To the extent that Plaintiff complains of the failure to include more restrictive physical limitations relating to his back impairment and lower extremity weakness, "the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present." *Greenspan*, 38 F.3d at 236.

In conclusion, the ALJ's evaluation of Plaintiff's subjective symptoms is supported by specific reasons that were supported by the record. *See Hughes*, 2022 WL 2525395, at *9 ("It is sufficient for the ALJ to include in his ruling specific references to the evidence and specific reasons for his findings showing that the relevant regulatory factors were considered."); *see also Brian J. v. Saul*, 438 F. Supp. 3d 903, 908 (N.D. Ill. Feb. 7, 2020) (reported) (finding that the ALJ's "subjective symptom evaluation" was supported by "'specific reasons supported by the record,'" and plaintiff did not show that it was "patently wrong") (citations omitted). The ALJ properly considered Plaintiff's symptoms under SSR 16-3p, and remand is not warranted on this issue.

## IV.    RECOMMENDATION

The Commissioner's decision should be **AFFIRMED**.

**SO RECOMMENDED** on this 14th day of July, 2023.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE